GERTRUDE LEPLEY CLIMAN, Appellee, v. CHARLES A. LEPLEY, Appellant.

No. 42642.

OCTOBER 23, 1934.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellant.

Watson & Watson, for appellee.

ALBERT, J.—Jacob Lepley was for many years a resident of Warren county, Iowa. He had five children, four boys and one girl. The girl was married to one Climan by name, and she is the plaintiff herein. One of the boys was Charles A. Lepley, the defendant herein. Jacob Lepley's wife (the mother of these children) died in October, 1921. In 1928 he was married to Ruth Nixon, who, after all times in controversy herein, divorced him.

Jacob Lepley was the owner at one time of something over 900 acres of land situated in Warren and Marion counties. In May, 1931,

deeds were made by Jacob Lepley and his then wife, conveying about 297 acres of land in Warren and Marion counties to the defendant Charles A. Lepley, and it is around the making of these deeds that this lawsuit centers. It is the claim of the plaintiff that at the time the deeds were made Ruth (the then wife of Jacob Lepley) refused to sign the deeds unless Charles would agree to pay to his sister Gertrude (the plaintiff herein) the sum of $4,000; and the case turns almost wholly on the question of whether or not this agreement was in fact made. It appears from the record that this land that was deeded to Charles was free from incumbrance, and that certain other tracts of land owned by Jacob were from time to time deeded to other sons, some of which land was incumbered. Jacob also is shown to have had a general indebtedness of something over $5,000 to various parties, a part of which indebtedness, amounting to something over $800, had been put into judgment. It seems that the boys felt that the father was in financial distress, and for a period of something like two years prior to the time these deeds were made family conferences were held in which it was urged that the father, who was somewhere in the neighborhood of 72 year of age, was unable to take care of his property and that division thereof ought to be made among his children. In the distribution he made of his land, no land or other property was given to the plaintiff Gertrude, and her claim herein is founded on the aforesaid agreement between Ruth (the wife) and Charles (the grantee in the deeds).

The substance of Ruth's testimony is that at all times during these two years in which the matter was discussed, she insisted that, in the distribution of the property, Gertrude should receive a share. In March, 1931, Ruth was suffering from a goiter and was operated on. She testifies that the boys frequently appeared and insisted that she sign the deeds to the property, and that they even threatened her if she failed to do so. The deeds were signed at Bedford, Iowa. This was a short time after the operation on her for goiter and she seems not to have fully recovered therefrom. She says as to her condition at the time: "I says, 'I am sick and cannot read and there might be something I should not sign and I trust you to look those deeds over'." This was said to a lawyer who was present. She testifies that just prior to the making of the deeds she still insisted that she would not sign unless Charles agreed to pay Gertrude the $4,000 above referred to. In response to that demand on her part,

she testifies: "Charles said, 'Yes, I am to pay that, but I haven't the money and she can't get it before I do'." She further testifies as follows: "Q. Would you have signed the deeds if they had not told you that Gertrude would be paid the $4,000.00 by Charles Lepley? A. No, indeed I would not, and I told William. He says, 'What would you do if we didn't?' and I says, 'I would take one-third of what Jacob Lepley had, if they did not divide with Gertrude, and give her the $4,000.00.' * * * Then I signed the deeds."

The above is the heart of her testimony. Some parts of her testimony are denied by some witnesses, but we find much in the record in confirmation of her testimony.

The fact situation, as shown by the record, is entitled to much weight in considering the question of the credibility of this witness. She was in a position, as the wife of Jacob Lepley, to claim one-third of his property. The beneficiary of her contract was not a blood relative of hers, and she seems to have had no interest in the matter personally except her idea of justice in the distribution of this property among the five children of Jacob. Her beneficiary was not personally known to her, except possibly by correspondence, and there is nothing to show that she had any interest whatever in the beneficiary, other than as above expressed. Taking her testimony as a whole, it is consistent with reason and common sense, and where she is met with contrary testimony it comes from parties who are, either directly or indirectly, financially interested in the matter. Nothing can be accomplished by setting out the testimony in full on either side of the case, but we are abundantly satisfied that the plaintiff carried her burden of proof in this matter. The district court so concluded, and we have no disposition to disturb its findings in relation thereto. It is our conclusion that this contract was made between Ruth and Charles in substantially the form to which she testifies. It follows, therefore, that a contract was made between these parties for the benefit of the plaintiff and that the plaintiff is entitled to recover thereon. In the briefs the appellant has wandered afield on a discussion of the question of gifts, but we are unable to see where the law governing gifts has any application to the situation before us. The district court held in accordance with the prayer of the petition that a lien should be established on the land acquired by Charles under these deeds for the amount which the court found due the plaintiff. No complaint seems to have been made of this part of the findings and decree, and we

therefore will not stop to discuss it. Having reached the same conclusion that the district court reached herein, this case is affirmed. —Affirmed.

MITCHELL, C. J., and EVANS, KINDIG, DONEGAN, and KINTZINGER, JJ., concur.